UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KATIE P. HELAIRE                          CIVIL ACTION NO. 06-2188

VERSUS                                             **REFERRED TO:**

U.S. COMMISSIONER SOCIAL          **MAGISTRATE JUDGE HORNSBY**
SECURITY ADMINISTRATION

**MEMORANDUM RULING**

**Introduction**

       Katie Helaire ("Plaintiff") filed an application for disability benefits alleging an onset of disability beginning January 2, 2004. Plaintiff, who was born in 1954 and has past work experience that includes jobs as a medical records clerk, based her claim on a number of health problems. ALJ W. Thomas Bundy conducted a hearing and assessed Plaintiff's claim under the five step sequential analysis. He determined that Plaintiff had a residual functional capacity ("RFC") to perform the demands of light work and that Plaintiff was capable of performing the demands of her past relevant work (which was performed at the sedentary level).

       The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred

to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

**Issues on Appeal**

Plaintiff lists two errors on appeal. She first asserts that the ALJ erred at step three when he found she did not meet a listed impairment. Plaintiff invokes listing 9.08A (Diabetes) and 11.04 (Central Nervous System Vascular Accident). Second, Plaintiff argues that substantial evidence does not support the ALJ's step-four finding that she can perform her past relevant work.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Summary of Medical Evidence**

The record includes evidence from a variety of sources, including consultative reports and treatment records related to colon cancer surgery, diabetes, hypertension, knee strain, and

other health problems. Dr. Wendell Wall, an internal medicine physician, had treated Plaintiff for more than two years when he wrote a letter in August 2004 regarding her medical condition. He reported that Plaintiff had been doing well for years until January 2004 when she began having episodes of nausea and was admitted to the hospital. Plaintiff had a history of diabetes, hypertension, renal failure, seizures, and a malignant colon neoplasm. Plaintiff continued to have episodes of nausea and other problems even after her colon was treated with surgery. Dr. Wall stated that Dr. Sasaki, the colorectal surgeon, had recommended that Plaintiff not return to work for "quite some period of time." Dr. Wall stated that he was unable to find the cause of Plaintiff's recurrent episodes. He found that Plaintiff, despite her health problems, could "sit, stand, walk, carry and handle objects, hear and speak and travel without any difficulty." He added that Plaintiff "is physically able to perform tasks except for limitations imposed by Dr. Sasaki. Tr. 126. There is no record evidence of any specific limitations imposed by Dr. Sasaki.

Dr. John Ferrell, an orthopedic surgeon, examined Plaintiff in October 2004. Plaintiff complained of swelling, pain and warmth in both knees and difficulty standing for more than 30 minutes at a time. Plaintiff had been involved in a motor vehicle accident in a parking lot that caused back strain, but she reported that visits to a chiropractor were helping with those problems. Examination showed 2+ swelling in both knees, adequate stability and leg control, "some" pain with mobilization of the hips, and the ability to heel and toe walk satisfactorily. Plaintiff's kidney problems precluded taking medication often used to treat such problems.

Dr. Wall injected her knee with Celestone and Xylocaine. He reported that Plaintiff had "some mild degenerative osteoarthritis of her hips and significant patello femoral subluxation with degenerative osteoarthritis of the knees. Tr. 201-02.

Dr. Cheynita Woodson-Jones conducted a consultative examination in September 2004. Plaintiff reported that she had last worked in December 2003. She was then working as a billing clerk but had begun to experience some numbness and tingling in her right hand. After she had a stroke during a vacation, she was not able to resume her job. Plaintiff experienced nausea associated with her colon surgery, but she reported that she had vomited only once in the past five months so long as she takes her medication. With respect to diabetes, Plaintiff said that she was not required to check her blood sugar and was currently taking Glyset (oral medication) and following a diet. Plaintiff said she sometimes had tingling in her left foot but had not been diagnosed with neuropathy. Plaintiff was taking multiple medications for high blood pressure, which she reported goes up despite compliance with her medications. Plaintiff also described health problems such as sleep apnea and asthma. Plaintiff was able to walk without assistance or difficulty, and she was able to get on and off the exam table without problem. She had fine motor and dexterity of both hands within normal limits. Her motor strength was rated at a four or five out of five in each extremity. She did have difficulty with right-hand pincer function, evidenced by difficulty getting paper clips out of a cup and picking up coins from a desk. Tr. 183, p. 90.

Dr. Adu Ebrahim answered interrogatories regarding Plaintiff's health records. He summarized Plaintiff's medical problems and opined that Plaintiff's impairments did not meet the requirements of any listed impairment. He described Plaintiff's diabetes and hypertension as "very well controlled." Tr. 72-76. Dr. Ebrahim also completed a form in which he indicated that Plaintiff had no limitations in any significant area of functioning. Tr. 277-80.

**Listings**

The listings found in the regulations describe levels of impairment related to each of the major body systems. The Commissioner has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity." Sullivan v. Zebley, 110 S.Ct. 885, 891 (1990); 20 C.F.R. § 404.1525 and § 416.925. Thus, a finding that a claimant's impairment satisfies a listing compels a finding of disabled without any further analysis.

Listings criteria are "demanding and stringent." Falco v. Shalala, 27 F.3d 160, 162 (5th Cir.1994). A mere diagnosis of a condition will not suffice. The claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." § 404.1525(d); § 416.925(d). The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a Step 3 listing

determination. Sullivan,110 S.Ct. at 891("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria").

Plaintiff invokes two listings. The first, Listing 11.04 (Central Nervous System Vascular Accident), requires more than three months post-accident of certain problems, one of which "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)."  Listing 9.08 (Diabetes Mellitus) may be satisfied if there is also present "Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)."  The introductory material in 11.00C refers to persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances.  The assessment of the impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

Plaintiff's listing arguments rely heavily on her own testimony (which the ALJ accepted as only partially credible), and attempt to discount statements and findings in the medical records.  The Commissioner, on the other hand, points to evidence such as Dr. Woodson-Jones' statement that Plaintiff had only "mild" right side weakness and "awkwardness" in using her right hand. Plaintiff argues that those adjectives do not preclude a finding of significant and persistent disorganization of motor function. But whether those

findings preclude a determination of listing level severity is not at issue. The question is whether Plaintiff has sustained her step-three burden and shown that the ALJ's decision is not supported by substantial evidence. The record contains evidence that Plaintiff has difficulties with strength and grip of small objects, and Plaintiff has some moderate knee and hip problems, but there is not a strong body of evidence to show disorganization of motor function in two extremities that results in sustained disturbance of gross and dexterous movements, or gait and station. Plaintiff has not pointed to adequate evidence to warrant judicial relief with respect to her step-three argument.

**Past Relevant Work**

Plaintiff's other argument on appeal is that the ALJ's step four-decision that Plaintiff can return to her past relevant work is not supported by substantial evidence. Plaintiff described her past work as requiring eight hours of sitting with the heaviest weight lifted being less than 10 pounds. The job did not entail using machines, tools or equipment. Tr. 60. Plaintiff's argument largely relies upon the contrast between her subjective description of her limitations and the indications in the medical records. Plaintiff particularly faults the ALJ's alleged reliance on Dr. Ebrahim's report, but a review of the ALJ's decision shows that he dedicated only a few sentences to summarizing the report. Tr. 16 and 18. The ALJ looked to all of the medical evidence and history, and his conclusion based on that evidence that Plaintiff could perform the minimal demands of her past job, sedentary in nature, is supported by substantial evidence. There may be evidence to the contrary, largely

Plaintiff's testimony, but the ALJ made reasonable evidentiary choices. Accordingly, his decision is supported by substantial evidence, and a judgment affirming the Commissioner's decision will be entered.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 11th day of February, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE